| | | |
|---|---|---|
| FIRST FARRAGUT UNITED METHODIST CHURCH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. _184410 - 2_ |
| SELECTIVE INSURANCE COMPANY OF AMERICA and SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

First Farragut United Methodist Church, as plaintiff, submits this Complaint against Selective Insurance Company as follows:

### PARTIES

1.     First Farragut United Methodist Church ("FFUMC") is a religious organization organized pursuant to the Holston Conference of the United Methodist Church and located within the Oak Ridge District at 12733 Kingston Pike, Knoxville, Tennessee 37934.

2.     Selective Insurance Company of America ("SICA") is an insurance provider licensed to do business in the State of Tennessee.  Its principal place of business is located at 40 Wantage Avenue, Branchville, New Jersey 07890-1000.  Pursuant to Rule 4.05(3), Tenn. R. Civ. P., SICA may be served with process through its Executive Vice President, General Counsel and Chief Compliance Officer, Michael Lanza.

3.     Selective Insurance Company of the Southeast ("SICSE") is an insurance provider licensed to do business in the State of Tennessee.  Its principal place of business is located at 3426 Toringdon Way Street, Charlotte, North Carolina 28277.  Pursuant to Rule 4.05(3), Tenn.

R. Civ. P., SICSE may be served with process through its Executive Vice President, General Counsel and Chief Compliance Officer, Michael Lanza.

4.     SICA and SICSE shall be referred to collectively as Defendants.

## FACTS

5.     FFUMC purchased comprehensive insurance coverage, including property and casualty insurance ("Coverage"), from the Defendants to provide coverage for, among other things, property damage to the structures and buildings located at 12733 Kingston Pike, Knoxville, Tennessee 37934 ("Property"). The Defendants issued an insurance policy ("the Policy") which was in effect as of April 27, 2011.

6.     On April 27, 2011, the Knoxville area suffered a major, catastrophic storm which included high winds, lightning, tornado activity, 3.5 inches of rain, and significant and widespread hail, including golf ball sized hail, and in some cases, softball sized hail. The hail storm lasted approximately 3 minutes, and as a result, hail covered 50-60% of the ground following the storm. The evening storm caused severe damage not only to infrastructure, such as roads and bridges, but widespread, significant damage to area homes and businesses. The severity of the storm has been clearly documented and reported both within and beyond the State of Tennessee.

7.     FFUMC's Property was pummeled by hail during the storm, and the building and structures on the Property suffered significant structural damage to the roofing systems and heating and cooling systems ("HVAC systems").

8.     The FFUMC Property is located on approximately 16 acres and, at the time of the damage, was less than 10 years old. The Property consists of four adjoining structures of brick and masonry construction with both pitched and flat roofing systems and is approximately 33,000 square feet.

2

9.      The FFUMC Property's roofing system consists of a flat roof with mechanically attached 40 millimeter Duro-Last PVC membrane over a polyisocyanurate and metal decking as well as an architecturally pitched roof with 30 year architectural shingles.

10.     The various roof sections of the Property comprised the following sections of 40 mil. Duro-Last comprising R1 of 1,728 square feet, R2 of 11,312 square feet, R2 of 7,658 square feet, R4 of 8,246 square feet and parapets of 5,800 square feet for a total square footage of Duro-Last membrane of 34,744 square feet.

11.     The roof consists of flat roof with metal decking covered by Duro-Last membrane of approximately 4 inches thickness to 12 inches thick at the parapets. The parapets are approximately 3 foot to 8 foot high and 12 inches wide and finished from the flat roof with Duro-Last membrane and pre-formed metal flashing. The roof consisted of interior drains w/ roof overflow scuppers.

12.     In addition, the HVAC systems are located both on the roof and attached to the Property. The HVAC systems, roof vents, vent fans, roof drains and scuppers suffered significant damage.

13.     The various roof sections of the Property also included the following sections of architectural shingles, including sections R5 consisting of 2,508 square feet and R6 comprising 404 square feet for a total square feet of 2,912 of architectural shingles.

14.     FFUMC promptly notified the Defendants of the damage to the Property and asserted a claim pursuant to the Coverage.

15.     The Defendants were slow to respond to FFUMC's claim for damages to the Property, and the Defendants asserted that the visible damage caused by the hail was merely cosmetic in nature and did not impact the structural integrity of the vast majority of the roofing system and the HVAC system.

3

16.     FFUMC obtained an estimate for repairs to the roof structure and related structures from FGG Enterprises. The estimate included equipment repairs and replacement of $5,637.00, repairs and replacement to the asphalt shingle roof system of $19,850.00 and repair and replacement to the flat roof system of $218,200.00. *See* FGG Estimate attached as *Exhibit A*.

17.     The Defendants asserted that the damage to the roof systems and equipment was merely cosmetic in nature and denied FFUMC's claim for damages to the flat roof system and equipment.

18.     As a result, on July 21, 2011, David Sallas of FGG Enterprises retained the services of a Building Consultant, Macon E. Gooch III, to provide an evaluation as to the extent of the damage to the roof and HVAC systems of the Property ("Gooch Report"), attached as *Exhibit B*.

19.     According to the Gooch Report, as well as the physical evidence clearly visible on the Property, there was extensive hail impact damage to both the membrane and shingled pitched roof systems, metal flashings, gutters, downspouts and vent fans.

20.     The Gooch Report indicates that, as well as the physical evidence found, the integrity of the membrane roof was compromised by hail damage that results in shattering concentric circles and stress marks. The damage resulted in cracking and also roof leakage.

21.     The roof manufacturer, Duro-Last, inspected the roof on October 3, 2011, and it found that the manufacturer's warranty was voided due to hail damage which compromised the watertight integrity of the roof membrane system. *See* October 11, 2011, letter attached as *Exhibit C*.

22.     Notwithstanding, the Defendants continued to deny coverage for the damage to the Property. FFUMC wrote to the Defendants on October 27, 2011, detailing the efforts it

4

engaged in to act in good faith in making a claim pursuant to the Policy. *See* October 27, 2011, letter attached as *Exhibit D.*

23. The Defendants asserted that FFUMC could pursue an appraisal process pursuant to the language of their Coverage, and FFUMC did so.

24. The Policy provided that if FFUMC disagreed on the value of the property loss, it may make a written demand for an appraisal of the loss. If it did so, each party would select an appraiser and the two appraisers would select an umpire. The Policy provided that the appraisers will state separately the value of the property and loss, and if they fail to agree, they would submit their differences to the umpire.

25. Although the Policy provision provided that if two of the appraisers agreed, the decision would be binding, it also provided that the Defendants still retained the right to deny the claim.

26. FFUMC received a letter dated April 16, 2012 from Donan Engineering to act as umpire. *See* April 16, 2012, letter attached as *Exhibit E.* The letter indicated that the umpire would visit the site on April 18,2012. However, the umpire did not visit the site on that date or any other date to FFUMC's knowledge.

27. The letter indicated that the Defendants retained Luke Sharara as their appraiser, and Corum Engineering was FFUMC's appraiser. FFUMC never received copies of any appraisals by either appraiser, and it was never contacted by the umpire, Donan Engineering, to perform a site inspection or otherwise evaluate the damage to the Property.

28. Shortly thereafter, FFUMC received an appraisal award signed by Luke Sharara on May 8, 2012, and Paul Ivie of Donan Engineering dated May 1, 2012, awarding FFUMC $23,284.00, thus effectively denying any coverage for replacement of the flat roof system and related damaged structures. The Appraisal was handwritten and unreadable, and the Defendants

5

failed to provide any further explanation for the denial of FFUMC's claim for replacement of the flat roof system and related structures. A copy of the Appraisal is attached as *Exhibit F*.

29.     Mr. Sharara and Mr. Ivie did not perform their obligations to make an evaluation of the roof system and provide an appraisal as provided by the Policy. On June 5, 2012, the Defendants issued a check in the amount of $22,284.00. FFUMC refused to accept the amount.

30.     In October of 2012, the Defendants cancelled the renewal of FFUMC's Policy for Coverage.

31.     FFUMC continues to suffer damage as a result of the Defendants' refusal to provide for Coverage to repair and replace the flat roof system. FFUMC does not have adequate funds to replace the flat roof system absent payment by the Defendants according to the terms of the Policy, and due to the delay in providing for the repairs, the cost of doing so will likely increase from the original estimates. The Property continues to suffer additional damage including the risk of mold and mildew and water damage as a result of the Defendants' refusal to provide for coverage pursuant to the terms of the Policy.

32.     It is common knowledge that virtually every roof of businesses and homes damaged as a result of the hail storm on April 27, 2011, were replaced and repaired. Yet, the Defendants continue to maintain that FFUMC's flat roof was not damaged beyond cosmetic nature, despite the engineering reports to the contrary and the fact that the roof manufacturer voided the warranty as a result of the hail damage.

## COUNT I - BREACH OF CONTRACT

33.     FFUMC re-alleges the claims in Paragraphs 1-32 of the Complaint.

34.     The Defendants breached their obligations to pay for FFUMC's property and casualty losses which were the result of the significant storms on April 27, 2011.

6

35. FFUMC suffered damages as a direct and proximate result of the Defendants' refusal to provide Coverage pursuant to the Policy and provide for reimbursement in an amount to be determined at trial. In addition, FFUMC is entitled to its attorneys' fees as result of this action in an amount to be determined at trial.

### COUNT II - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

36. FFUMC re-alleges the claims in Paragraphs 1-35 of the Complaint.

37. The Defendants breached their contractual duty of good faith and fair dealing as a result of their failure and refusal to pay for the repair and replacement of the flat roof systems and related structures on the Property.

38. FFUMC has suffered damages as a direct and proximate result of the Defendants' breach of their contractual obligations of good faith and fair dealing.

WHEREFORE, First Farragut United Methodist Church prays for the following relief:

A. That process issue to each of the Defendants, and they be required to respond as provided in the Tennessee Rules of Civil Procedure;

B. That the Court find that the Defendants breached their contract with the Plaintiff;

C. That the Court find that the Defendants breached their contractual obligation of good faith and fair dealing to the Plaintiff;

D. That the Court find that the Plaintiff has suffered damages as a direct and proximate result of the Defendants' actions;

E. That the Court find that the Plaintiff is entitled to damages in an amount to be determined at trial; and

F. That the Plaintiff be awarded any such further discretionary relief to which it may be entitled.

FILED this 21st day of December, 2012.

K KLT 312489 v1
2860000-002628 12/20/2012

_[signature]_

Kelli L. Thompson (BPR No. 13977)
Attorney for Plaintiff
First Farragut United Methodist Church

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
(865) 549-7000

K KLT 312489 v1
2860000-002628 12/20/2012

## COST BOND

We acknowledge ourselves sureties for costs in this cause.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ

By: _____

K KLT 312489 v1
2860000-002628 12/20/2012



Proposal For: David Salass

First Farragut United Methodist Church
11915 Kingston Pike
Knoxville, TN

**Scope One: Repair to equipment**

1. Repair exterior insulation to Trane package units labeled
   RTU 10 and 11
   This will be done by utilizing insulation on top of the
   existing insulation and coating all exterior portions of
   insulation with white sealant that is designed for exterior
   use.
2. Comb out condenser coils on Trane package unit RTU #4
   and Mitsubishi brand split system MIU-1.
3. Replace the following covers to these exhaust fans
   EF-10 (Greenheck brand model # GB0904XQDR2)
   EF-11 (Greenheck brand model # GR1S-8-QD)
   EF-1 (Greenheck brand model # CUBE-300-20-6)
   EF-9 (Greenheck brand model # GBB14XQD)
   EF-12 (Greenheck brand model # GB0806X)
   Any further repairs to fans (example motors) not included

   Cost for equipment repairs        $5,637.00

**Scope Two: Shingled Roofs Approximately 3,400 square feet**

1. Remove existing shingles and felt
2. Install Ice and Water Shield at edges
3. Install 30# felt
4. Install new drip edge
5. Install 30 year Dimensional shingles(color owners choice)
6. Install shingle over vented ridge cap
7. Install all needed flashing

   Cost for shingled roofs        $19,850.00

   Total      EXHIBIT        $25,487.00
   A



**Proposal For:**

First Farragut United Methodist Church
11915 Kingston Pike
Knoxville, TN

*TPO roof 30 mil*
*2nd gen*
*this is*
*yrs gen 60mil*

**Scope One: Flat Roof Replacement**   Approximately 29,642 square feet

1. Remove existing white roof membrane, leaving existing insulation in place.
2. Adhere with Olybond Insulation Adhesive; a 1'2" recover board over the existing Tapered ISO.
3. Fully adhere 60 Mil Firestone White TPO membrane, hot air weld all seams per manufacturer specifications.
4. Wall and curb flashing to be done to Firestone specifications.
5. Install Term Bars and Counterflashings at the walls and on the curbs.
6. Install walk pads at all AC units.
7. Furnish Firestone 10 year warranty.
8. Provide a two year Contractor warranty.

**Base Price**                        $218,200.00

*6 weeks after approval*

632 Grassland Drive ▪ Maryville, Tennessee 37804
865/233-0918 (Office) ▪ 865/388-5720 (Cell) ▪ 865/380-0055 (Fax)

# Hail Damage Assessment

## For

## First Farragut United Methodist Church

## 12733 Kingston Pike

## Knoxville, Tennessee

## August 2, 2011



### Prepared By:

Macon E. Gooch, III Building Consultants, Inc.

752 Dacula Road, Suite C – Dacula, Georgia 30019

(678) 442-1198 – meg@macongooch.com

EXHIBIT
13

1

# Table of Contents

| Section | Title | Page No. |
|---------|-------|----------|
| - | Cover Sheet | 1 |
| - | Table of Contents | 2 |
| A | Executive Summary | 3 |
| B | Scope of Services | 4 |
| C | Facility Description | 4 |
| D | Storm Event | 4 |
| E | Existing Roof Systems | 5 |
| F | Roof Damage Assessment | 7 |
| G | Summary and Conclusions | 11 |

2

## A. Executive Summary

On the evening of April 27, 2011, the First Farragut United Methodist Church in Knoxville, Tennessee was impacted by a very severe thunderstorm which contained golf ball to tennis ball sized hail stones. The hail pummeled the roof for approximately three minutes causing severe damage to all aspects of the roofing system and associated elements.

The existing roof system is a combination of a flat roof covered in mechanically attached 40 mil Duro-Last PVC membrane over tapered polyisocyanurate and metal decking and architectural pitched roof with 30 year architectural shingles. The quantities of roofing are as follows.

| Section Desig. | Roofing Materials | Gross Area (SF) | Comments |
|---|---|---|---|
| R1 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 1,728 | Area shown is horizontal area only and does not include parapet allowances |
| R2 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 11,312 | Area shown is horizontal area only and does not include parapet allowances |
| R3 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 7,658 | Area shown is horizontal area only and does not include parapet allowances |
| R4 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 8,246 | Area shown is horizontal area only and does not include parapet allowances |
| Parapets | 40 mil Duro-Last PVC Mechanically Applied Membrane | 5,800 | |
| | **Total Membrane** | **34,744** | |
| R5 | 30 Year Architectural Shingles | 2,508 | Area is the actual area covered by the shingles |
| R6 | 30 Year Architectural Shingles | 404 | Area is the actual area covered by the shingles |
| | **Total Shingles** | **2,912** | |

The roofing materials have been damaged and the warranties voided due to the storm occurrence. To prevent rapid system deterioration and water intrusion leading to more extensive repairs, it is recommended that the entire roofing system be removed, replaced and repaired as necessary to fully restore the roofing system to its pre-storm condition.

3

## B. Scope of Services

On July 21, 2011, we were contacted by David Sallas of FGG Enterprises, to assess the roof damage to the First Farragut United Methodist Church located in Knoxville, Tennessee during a severe storm which occurred on the evening of April 27, 2011. The services are to include a visual assessment, photographic documentation, analysis of the roofing systems present and damage assessment, all presented in a report format suitable for presentation to the Church's insurance carrier.

## C. Facility Description

The First Farragut United Methodist Church is located in the Farragut suburban area on the western side of Knoxville, Tennessee. It fronts on the Kingston Pike and is approximately two miles east of the I-40/I-75 interchange. The church is situated on the south eastern side of a 16.39 acre tract acquired in 1999. The building complex, which is less than 10 years of age, consists of four adjoining buildings which are typically two story masonry and steel structures with full brick façades with a combination of both flat and pitched roofs. The building occupies a total footprint of approximately 33,000 square feet.

The flat roofs are at four different elevations and are surrounded by 3' high parapets. The pitched roofs are for architectural appearance and are located over the top of the main sanctuary and over the Kingston Pike entrance. The pitched roofs are on a 12:12 pitch and covered with a 30-year architectural shingle.

## D. Description of Storm Event

On the evening of April 27, 2011, Farragut was placed under a severe storm and tornado watch and subsequently hit by a series of severe thunder storms accompanied by high winds, frequent lightening, large hail and tornadic conditions around 9:00 PM. According to local news reports from eyewitnesses the hail varied from golf ball sized to tennis ball sized stones with some reports of softball sized hail in the area which lasted in excess of three minutes. Rainfall amounts exceeded 3.5 inches and the hail covered the ground with a coverage estimated to be between 50% and 65%. Numerous local structures in the immediate area have reported moderate to severe hail damage following this storm event.

4

## E. Existing Roof Systems:

The First Farragut United Methodist Church roof system consists of four levels of flat roof. These roofs are constructed with an underlayment of metal roof decking (upper level is all concrete decking) covered by a layer of tapered polyisocyanurate with a minimum thickness of 4" and a maximum thickness of 12" along the parapet wall. The roofing membrane is a 40 mil white PVC Duro-Last system. The parapets which are 3' to 8' high and 12" wide are finished with 40 mil Duro-Last membrane and preformed metal flashing components. The roofs utilized an interior drain system in combination with roof overflow scuppers.



**Aerial View of Church Roof System with Basic Dimensions and Section Designations**

5

There are numerous roof penetrations for roof top HVAC units, plumbing vent stacks, vent fans, roof drains and scuppers. Examination of the original roof installation found that it had been properly installed and maintained.

As shown in the Aerial View above the roof has been divided into six sections designated as R-1 through R-6 based on elevation and roofing materials. The physical attributes of each of these sections is as follows:

| Section Desig. | Roofing Materials | Gross Area (SF) | Comments |
|---|---|---|---|
| R1 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 1,728 | Area shown is horizontal area only and does not include parapet allowances |
| R2 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 11,312 | Area shown is horizontal area only and does not include parapet allowances |
| R3 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 7,658 | Area shown is horizontal area only and does not include parapet allowances |
| R4 | 40 mil Duro-Last PVC Mechanically Applied Membrane | 8,246 | Area shown is horizontal area only and does not include parapet allowances |
| Parapets | 40 mil Duro-Last PVC Mechanically Applied Membrane | 5,800 | |
| | **Total Membrane** | **34,744** | |
| R5 | 30 Year Architectural Shingles | 2,508 | Area is the actual area covered by the shingles |
| R6 | 30 Year Architectural Shingles | 404 | Area is the actual area covered by the shingles |
| | **Total Shingles** | **2,912** | |

6

## F. Roof Damage Assessment

Examination of the roof system found extensive evidence of hail impact on both the flat and pitched portions of the roof along with extensive damage to the light metal flashings, gutters, downspouts and ventilation fans. This evidence is clearly depicted in the following photographs.



**Dimpled and Dented Ventilation Hood**

The Hail bent, dimpled and displaced the light metal components of the roof system which compromises their function allowing for the entrance of rain into the building envelope.



**Damage to Gutter and Downspouts**



**Damaged Light Metal Flashing**



**Displaced and Dimpled Ventilation Hood**

The hail has diminished the integrity of the membrane roofing materials due to the multiple impacts from the hail stones. When the hail stones impact the membrane which has become more

7

brittle over the ten years of its life, it shatters the membrane in a series of concentric circles that are often not readily visible to the naked eye. However, these stress marks weaken the membrane causing hairline cracking which worsen over time and always result in roof leakage. All manufacturers' warranties are voided when a membrane has been ravaged by hail due to this fact. The following photographs show the extensive magnitude of the hail strikes on the roofing membrane.



8



In addition to the damage done to the flat roof membrane, the parapets were also severely damaged by the hail strikes as shown in the following photographs.

9



These few photographs clearly show that the hail damage is consistent throughout the roof system and that the damage must be repaired to prevent water intrusion into the building envelope which would lead not only to further structural damage but would likely cause mold and mildew development which could become an extreme danger to the health and safety of the building occupants.

10

## G. Summary and Conclusions

The severe hail storm which impacted the First Farragut United Methodist Church in Knoxville, Tennessee on April 27, 2011 has resulted in extreme damage to all of the components of the roof system. In order to restore this roof to a pre-storm condition will require the removal and replacement of approximately 29,000 square feet of 40 mil PVC roofing membrane; 5,800 square feet of parapet membrane; 3,000 square feet of 30 year architectural shingles; light metal flashings and details and other associated and necessary elements as necessary to yield a complete, functional and warranted roofing system.

This repair and replacement program should be undertaken at the earliest date possible in order to preclude the intrusion of water into the building envelope which would lead quickly to structural and air quality problems.

Should you have any questions or comments concerning this report or inspection, please feel free to contact us at your convenience.

Very Truly Yours,

Macon E. Gooch, III

Georgia PE No. 8889

11



525 Morley Drive
Saginaw, MI 48601
(989) 753-6486
(800) 248-0280
FAX (989) 753-4472
FAX (800) 432-9331
www.duro-last.com

October 11, 2011

Mr. John Brewster
First United Methodist
12733 Kingston Pike
Farragut, TN 37922

**SUBJECT:** First United Methodist (Warranty # MS 474255 and MS 485644)
12733 Kingston Pike
Farragut, TN 37922

Dear Mr. Brewster:

On October 3, 2011, the above-referenced Duro-Last roofing system was examined by a Duro-Last technical representative. The examination revealed impact damage to the membrane that had been caused by hail. Hail damage is excluded from coverage under the Duro-Last warranty:

"Duro-Last, Inc., shall in no instance be held liable for any damages whatever arising from causes not fully within its control including among other such causes: (a) Damage caused by fire, lighting, hurricanes, gales, **hail**, tornadoes, floods, and earthquakes."

Once a roof has been damaged by hail, the watertight integrity of the membrane is compromised. Therefore, I respectfully suggest you contact your Duro-Last independent sales representative for a list of Duro-last authorized dealer/contractors who can assist you in replacing the damaged membrane. You may wish to check whether your insurance policy provides coverage for hail damage.

Sincerely,

*Charles C Smith Jr.*

Charles C. Smith, Jr.
Quality Assurance Regional Manager

EXHIBIT
C

je/gh

c: Lyn Davis-Duro-Last Independent Sales Representative, Mark Buckley-Sales Department, file

H:\WS Secretary\Territory 2- Charles\Building Owner Letters\Damage to the Membrane Not Warranty-Related\Hail Damage Letter\2011\First United Meth 10-11-11 MS474255MS485644.doc

Other Locations: Grants Pass, Oregon • Jackson, Mississippi • Sigourney, Iowa



# First Farragut United Methodist Church

### 12733 Kingston Pike
### Knoxville, TN 37934

ffumc@ffumc.org
www.ffumc.org

Office (865) 966-8430
Fax (865) 675-4435

October 27, 2011

To Ms Ashley Denman:

I understand that you would like to invoke the appraisal clause of our insurance policy and have stated to me in our telephone conversation on 10-27-11 that you would be using the services of your original appraiser. Please note the conclusions made by the professional engineer we employed and those of your appraisal. There is a gross disconnect in the findings, yet our report is considerable more concise and matches results found throughout the area by local businesses, homes and churches.

First Farragut United Methodist Church has acted in good faith through the process by making our claim, assisting the adjustor in examining the church roof, by securing the services of a very capable and knowledgeable general contractor as per your request, obtaining an extremely detailed report, 11 pages, by a professional engineer (enclosed) and quotes from reputable roofing companies. Finally, we have just received a report from the manufacturer, Duro-Last that states unequivocally that our roof was damaged beyond a doubt or repair. (Enclosed)

We understand that certain procedures may be required and we have done what has been asked of us in the endeavor. We now ask that Selective do what ought to be done by paying our rightful claim.

The violent hailstorm of April 22, 2011 is well documented by Doppler radar, local weather reports and is evidenced by the severe damage suffered by hundreds of homes, businesses, churches and vehicles. Please pay our claim promptly before we suffer further damage to our church.

Sincerely,

Rev. John Brewster          J Kelly Clancy

# EXHIBIT

## D

# First Farragut United Methodist Church

12733 Kingston Pike
Knoxville, TN 37934

ffumc@ffumc.org
www.ffumc.org

Office (865) 966-8430
Fax (865) 675-4435

10-27-2011

Attention Ms Ashley Denman:

In response to your letter written October 20, 2011, this is to serve as a written notice that First Farragut United Methodist Church would like to proceed with the appraisal process as outlined in the policy conditions.

We felt you were aware that this would be our course of action. We were waiting on the results of the roof manufacturer's report, which will be included in the letter sent to you with other enclosures.

Respectfully,

J. Kelly Clancy

Chairman of Trustees First Farragut United Methodist Church

John G. Donan, Jr., P.E.
Chairman of the Board

J. Lyle Donan, P.E.
President


**DONAN**
Engineering Co., Inc.

CORRESPOND TO:
500 C Ambrose Avenue NW
Knoxville, Tennessee 37921
865-688-7220
865-688-7276 fax

April 16, 2012

First Farragut United Methodist Church
12733 Kingston Pike
Knoxville, Tennessee 37934

Selective Insurance
533 Church Street, #361
Nashville, Tennessee 37219

     RE:    Umpire proposal for Appraisal Project
             Loss Location: 12733 Kingston Pike, Knoxville, Tennessee 37934
             Claim Number: 21088700
             Date of Loss: Not available

This proposal is for service that will be provided as the umpire for the above
project. The scope of work, or disputed items, is to determine the extent of
damage to the roof membrane from hail impact and the repairability of the
membrane. The appraisers for this project will be:

Insurance Company Appraiser:
Lokman M. "Luke" Sharara, P.E.
District Manager
Rimkus Consulting Group, Inc.
2630 Elm Hill Pike, Suite 130
Nashville, TN 37214

Insured Appraiser:
Ron Corum
Corum Engineering
865-686-1663

The cost estimate for this project consists of 8 hours of time (@$145 per hour),
mileage (@$0.75/mile), and reimbursement of out-of-pocket expenses. The total
cost estimate is $1350. Each party is responsible for one-half of the invoice,
which is $675.

EXHIBIT
E

FORENSIC ENGINEERING & FIRE INVESTIGATION
800-482-5611
www.donan.com

Payment should be submitted on or prior to commencement of the site visit which is scheduled for Wednesday, April 18, 2012, at 1:00 pm.

Sincerely,
DONAN ENGINEERING CO., INC.

PAUL E. IVIE, P.E.
SENIOR FORENSIC ENGINEER

Cc: First Farragut United Methodist Church
Selective Insurance
Lokman M. "Luke" Sharara, P.E.
Ron Corum

<u>APPRAISAL AWARD</u>

**Insurance Company**
Name: SELECTIVE INS. CO.
Street: 577 CHURCH ST. #367
City: NASHVILLE, TN 37219

**Insured**
Name: First Emmanuel United Methodist Church II
Street: 12733 Kingston Pike
City: Knoxville, TN 37934

Policy No:

Claim No: 2.1088700

Loss Date: 4/27/11          Cause: HAIL
                                    (Wind, Hail, Fire, etc.)

Property Description/Address: 12733 KINGSTON PIKE, KNOXVILLE, TN

This acknowledges "PAUL C. TYW" _____ has been appointed
to act as umpire in accord with the policy conditions.

Witness our hands:

Date: 4/18/12          Appraiser: _____

Date: 4/18/12          Appraiser: _____

| ITEM | Loss Replacement Cost | Loss Actual Cash Value |
|------|----------------------|------------------------|
| 1. Remove and replace asphalt composition | | |
| 2. Shingles, PVC vent caps, coal duct | | |
| 3. Flashing, remove and replace | | |
| 4. Section of PVC vent to cold air affected | | |
| 5. Complete final detail removal, roof protection and material delivery, breathing, air, labor at the office level, etc. ALL included. | $25,241 | $23,284 |

Replacement cost of building(s) if requested: Not applicable

CLARIFICATIONS IF ANY: Amount to be deducted from last payments made on this claim should be deducted from this amount. These amounts reflect the cost of work to restore the roof at cost associated with the property to their pre-storm conditions

We certify that we have conscientiously and impartially performed the duties assigned to us in accord with the appraisal provisions of the policy and do hereby award the amounts established above for the described loss.

Witness our hands:

Date: 5/8/12          _____ ..... Appraiser

Date: _____          ..... Appraiser

Date: 6/1/12          _____ Umpire
                    (A minimum of two signatures required)

# EXHIBIT
# F

State: __IN__   Re: Insured: __FIRST FARRAGUT__
Location of Loss: __12733 Kingston Pike__
__Knoxville__
Date of Loss: __04/27/2011__
Claim#: __21088700__

## DECLARATION OF APPRAISERS

We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement of the replacement cost value and the actual cash value upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious aware of the same, according to the best of our knowledge, skill and judgment. We are not related to the insured either as creditors or otherwise, and are not interested in said property or the insurance thereon.

## SELECTION OF UMPIRE

We, the undersigned, hereby select and appoint __Paul Ivie__ of __Donn Engineering__ to act as Umpire to settle any matters of difference that shall exist between us, if any, by reason of and in compliance with the insurance policy and appointment.

Insured Appraiser: __Ron Corum__      Signature: __Ron M.R.C__    Date: __4/18/12__
(Print Name)                           (Sign Name)

Insurance Co. Appraiser: __Luke Sharara__   Signature: __Luke S__   Date: __11/01/2011__
(Print Name)                           (Sign Name)

## QUALIFICATION AND ACCEPTANCE OF UMPIRE

I, the undersigned, hereby accept the appointment of Umpire, as provided in the foregoing agreement, and solemnly swear that I will act with impartiality in all matters of difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious determination regarding the amount of loss under the policy, according to the best of my knowledge, skill and judgment. I am not related to either of the appraisers or the insured, and I am not financially interested as a creditor or otherwise, in the property listed below or in any insurance, which might apply to cover any part or all of the loss.

Umpire: __Donn Engineering__   Signature: __Paul E.__   Date: __4/18/12__
(Print Name)    __Paul Ivie__                (Sign Name)

# APPRAISAL AWARD

Insurance Company
Name: SELECTIVE INS. Co.
Street: 455 [illegible] ST, #361
City: NASHVILLE, TN 37219

Insured
Name: FIRST CUMBERLAND UNITED METHODIST CHURCH
Street: 12733 KINGSTON PIKE
City: KNOXVILLE, TN 37934

Policy No:

Claim No: 21088700

Loss Date: 4/27/11        Cause: HAIL
                          (Wind, Hail, Fire, etc.)

Property Description/Address: 12733 KINGSTON PIKE, KNOXVILLE, TN

This acknowledges PAUL C. TEVIS _____ has been appointed
to act as umpire in accord with the policy conditions.

Witness our hands:

Date: 4/10/12        Appraiser: [signature]

Date: 4/18/12        Appraiser: [signature]

| ITEM | Loss Replacement Cost | Loss Actual Cash Value |
|------|------------------------|------------------------|
| 1. Remove and replace asphalt comp shingles | | |
| 2. Chamfer PVC vent caps & seal duct | | |
| 3. Insulation removed and replace | | |
| 4. Reattach PVC vent to gable roof ridge | | |
| 5. comp o/s (incl. debris removal, ice + | | |
| protection, and installation of heating | | |
| and refuse to the upper levels) are ALL | $23,269 | $23,284 |
| Included. | | |

Replacement cost of building(s) if requested: Not applicable

CLARIFICATIONS IF ANY: [illegible, heavily obscured]

We certify that we have conscientiously and impartially performed the duties assigned to us in accord with
the appraisal provisions of the policy and do hereby award the amounts established above for the described
loss.

Witness our hands:

Date: 5/8/12        [signature]        Appraiser

Date: _____        _____        Appraiser

Date: 5/1/12        [signature]        Umpire
                    (A minimum of two signatures required)

State: __TN__   Re: Insured: __First Farragut__
Location of Loss: __12733 Kingston Pike__
__Knoxville__
Date of Loss: __04/27/2011__
Claim#: __210R8700__

## DECLARATION OF APPRAISERS

We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement of the replacement cost value and the actual cash value upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious aware of the same, according to the best of our knowledge, skill and judgment. We are not related to the insured either as creditors or otherwise, and are not interested in said property or the insurance thereon.

## SELECTION OF UMPIRE

We, the undersigned, hereby select and appoint __Paul Ivie__ of __Doran Engineering__ to act as Umpire to settle any matters of difference that shall exist between us, if any, by reason of and in compliance with the insurance policy and appointment.

Insured Appraiser: __Ron Corum__     Signature: __Ronald R. C__     Date: __7/18/12__
(Print Name)                                  (Sign Name)

Insurance Co. Appraiser: __Luke Sharum__  Signature: __Luke J__     Date: __11/01/2011__
(Print Name)                                  (Sign Name)

## QUALIFICATION AND ACCEPTANCE OF UMPIRE

I, the undersigned, hereby accept the appointment of Umpire, as provided in the foregoing agreement, and solemnly swear that I will act with impartiality in all matters of difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious determination regarding the amount of loss under the policy, according to the best of my knowledge, skill and judgment. I am not related to either of the appraisers or the insured, and I am not financially interested as a creditor or otherwise, in the property listed below or in any insurance, which might apply to cover any part or all of the loss.

Umpire: __Doran Engineering__     Signature: __Paul E.__     Date: __4/18/12__
(Print Name)                          (Sign Name)
__Paul Ivie__

**APPRAISAL AWARD**

Insurance Company
Name: SELECTIVE INS. Co.
Street: 522 CHURCH ST. #761
City: NASHVILLE, TN 37219

Insured
Name: FIRST FARRAGUT UNITED METHODIST CHURCH
Street: 12733 KINGSTON PIKE
City: KNOXVILLE, TN 37934

Policy No: _____

Claim No: 21088700

Loss Date: 4/27/11          Cause: HALL
                                      (Wind, Hail, Fire, etc.)

Property Description/Address: 12733 KINGSTON PIKE, KNOXVILLE, TN

This acknowledges   PAUL E. IVIE _____ has been appointed
to act as umpire in accord with the policy conditions.

Witness our hands:

Date: 4/10/12          Appraiser: _____

Date: 4/18/12          Appraiser: _____

|  | ITEM | Loss Replacement Cost | Loss Actual Cash Value |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
|  | ALL | | |

Replacement cost of building(s) if requested: _____

CLARIFICATIONS IF ANY: _____
_____
_____

We certify that we have conscientiously and impartially performed the duties assigned to us in accord with
the appraisal provisions of the policy and do hereby award the amounts established above for the described
loss.

Witness our hands:

Date: _____          _____ Appraiser

Date: _____          _____ Appraiser

Date: _____          _____ Umpire
                               (A minimum of two signatures required)

State: __TN__    Re:   Insured: __FIRST FARRAGUT__

Location of Loss: __12733 Kingston Pike__

__Knoxville__

Date of Loss: __04/27/2011__

Claim#: __21088700__

## DECLARATION OF APPRAISERS

We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement of the replacement cost value and the actual cash value upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious aware of the same, according to the best of our knowledge, skill and judgment. We are not related to the insured either as creditors or otherwise, and are not interested in said property or the insurance thereon.

## SELECTION OF UMPIRE

We, the undersigned, hereby select and appoint __Paul Juie__ of __Donan Engineering__ to act as Umpire to settle any matters of difference that shall exist between us, if any, by reason of and in compliance with the insurance policy and appointment.

Insured Appraiser: __Ron Corum__
(Print Name)
Signature: _____ (Sign Name)   Date: __4/18/12__

Insurance Co. Appraiser: __Luke Sharara__
(Print Name)
Signature: _____ (Sign Name)   Date: __11/01/2011__

## QUALIFICATION AND ACCEPTANCE OF UMPIRE

I, the undersigned, hereby accept the appointment of Umpire, as provided in the foregoing agreement, and solemnly swear that I will act with impartiality in all matters of difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious determination regarding the amount of loss under the policy, according to the best of my knowledge, skill and judgment. I am not related to either of the appraisers or the insured, and I am not financially interested as a creditor or otherwise, in the property listed below or in any insurance, which might apply to cover any part or all of the loss.

Umpire: __Donan Engineering__
(Print Name)
__Paul Oluie__
Signature: _____ (Sign Name)   Date: __4/18/12__